# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy L. McTaggart,            :
                              : No. 1845 C.D. 2015
               Petitioner    : Submitted: February 12, 2016
                              :
            v.                :
                              :
Unemployment Compensation    :
Board of Review,                :
                              :
              Respondent   :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN            FILED: April 19, 2016

Tammy L. McTaggart (Claimant) petitions for review of the September 18, 2015, order of the Unemployment Compensation Board of Review (UCBR) affirming the decision of a referee to deny Claimant unemployment compensation (UC) benefits under section 402(b) of the Unemployment Compensation Law (Law).[1] The UCBR concluded that Claimant was ineligible for UC benefits because she failed to establish a necessitous and compelling reason for voluntarily quitting her employment. We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b). Section 402(b) of the Law provides that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. §802(b).

Claimant worked full time for MexAmerica Foods (Employer) as a pre-mix line operator from October 18, 2010, through June 18, 2015. (Findings of Fact, No. 1.)[2] Claimant was under a doctor's care and taking medication for anxiety. (*Id.*, No. 2.) Employer knew that Claimant was on medication because Claimant had given her medication to Elaine Vogt, Employer's human resources manager, to hold for Claimant and to provide to Claimant when needed. (*Id.*, No. 3.) Claimant did not inform Employer of any work restrictions while she was being treated for anxiety. (*Id.*, No. 4.)

On June 18, 2015, Employer changed a normal operating procedure, which caused Claimant to have a panic attack. (*Id.*, No. 5.) Claimant asked to leave the building, but Employer denied her request. (*Id.*, No. 6.) Claimant then went out to lunch. (*Id.*, No. 7.) When Claimant returned, she learned that three other employees with more seniority than her had been allowed to leave work. (*Id.*) Claimant reiterated to Employer that she was having a panic attack and needed to leave the building. (*Id.*) Employer told Claimant that she needed to stay on the production line for one more hour, at which time Employer would reassess whether Claimant would be moved to another area or permitted to go home. (*Id.*, No. 8.) Claimant voluntarily left work after Employer told her that she needed to wait an additional hour. (*Id.*, No. 9.)

Claimant believed that Employer would call her after June 18, 2015, to return to work. (*Id.*, No. 10.) When Employer did not call, Claimant did not contact

[2] The UCBR adopted and incorporated the referee's findings of fact and conclusions of law in their entirety.

2

Employer or report for her next scheduled shift because she did not want to return to work after her June 18, 2015, panic attack. (*Id.*)

Claimant filed a claim for UC benefits, which the local service center granted. Employer appealed to the referee, who held a telephone hearing on August 5, 2015, during which Claimant, Vogt, and Darlene Samick, Claimant's floor supervisor, testified.[3] The referee found that Claimant failed to specifically inform Employer of her medical problem or any restrictions so that Employer could make a reasonable accommodation. (Ref.'s Decision at 3.) Because Claimant failed to meet her burden of proving a necessitous and compelling reason to quit her employment, the referee reversed the service center's decision. (*Id.*) Claimant appealed to the UCBR, which affirmed. Claimant now petitions this court for review.[4]

Claimant first argues that the UCBR erred in concluding that Claimant initiated her separation from employment because Claimant did not intend to quit her job.[5] We disagree.

_____

[3] Another Employer witness, Tom Kornacki, was also present during the hearing but did not offer testimony. Neither Claimant nor Employer was represented by counsel at the hearing.

[4] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

[5] In her brief, Claimant argues that Vogt asked her to sign a voluntary resignation form before she left work on June 18, 2015. (Cl.'s Br. at 12-14; *see* R. Item No. 3 at 5b.) Claimant asserts that due to her mental state at the time, she did not read the form before signing it and, thus, her resignation was not voluntary. (Cl.'s Br. at 12-14.) However, the UCBR did not base its voluntary quit determination on that document. Therefore, we need not address this claim.

3

The evidence credited by the UCBR established that after experiencing the panic attack, Claimant went out to lunch and returned from her lunch break to continue working. When Claimant again asked to leave the building, Employer told her that she needed to stay on the production line for one more hour, after which Employer would decide whether to move Claimant to another area or allow her to go home. The UCBR found that it was only *after* Claimant learned that other employees had been allowed to leave early that Claimant asserted her inability to remain at work. Furthermore, Claimant admitted that after leaving work on June 18, 2015, she neither contacted Employer nor reported for her next scheduled shift because she did not want to return to work. (N.T., 8/5/15, at 10.) Therefore, the record contains substantial evidence to support the UCBR's determination that Claimant initiated her separation from employment.

Next, Claimant contends that the record lacks substantial evidence to support the UCBR's finding that Clamant did not specifically inform Employer of her medical condition. We disagree.

It is well settled that a claimant's health problem can create a necessitous and compelling reason to terminate employment. *Genetin v. Unemployment Compensation Board of Review*, 451 A.2d 1353, 1355 (Pa. 1982). To establish a health problem as a compelling reason to quit, the claimant must prove that: (1) an adequate health reason existed to justify the quit; (2) she informed the employer of the health problem; and (3) she is available to work if reasonable accommodations can be made. *Lee Hospital v. Unemployment Compensation Board of Review*, 637 A.2d 695, 698 (Pa. Cmwlth. 1994). A claimant's failure to prove any of these elements will bar a claim for UC benefits. *Id.*

4

Here, the UCBR determined that Claimant satisfied the first prong, finding that "[C]laimant had health reasons of sufficient dimension that compelled [her] to quit on June 18, 2015." (Ref.'s Decision at 3.) The UCBR determined, however, that Claimant did not satisfy the second prong because she failed to prove that she informed Employer of her medical condition. We agree.

"[A] claimant who desires to quit a job for health reasons must communicate her health problem[] to her employer so that the employer can attempt to accommodate the problem." *Blackwell v. Unemployment Compensation Board of Review*, 555 A.2d 279, 281 (Pa. Cmwlth. 1989). Before an employer's duty to accommodate is triggered, the employer must have sufficient knowledge of the claimant's health condition. *See id.* Thus, the claimant must communicate her "specific physical restrictions" to the employer and "*explain* [to the employer] her inability to perform her regularly assigned duties." *Fox v. Unemployment Compensation Board of Review*, 522 A.2d 713, 715 (Pa. Cmwlth. 1987); *see Bailey v. Unemployment Compensation Board of Review*, 653 A.2d 711, 713-14 (Pa. Cmwlth. 1995).

The record shows that although Vogt knew that Claimant was under a doctor's care and kept Claimant's medications in her office, Claimant never discussed with Vogt her medical condition or any restrictions associated with her condition. Vogt testified that Claimant "would just come in and tell me if she needed [a medication] and I would give it to her." (N.T., 8/5/15, at 15.) Vogt testified that Claimant "gave me lists of medications that she was taking . . . . She would just hand me a piece of paper . . . telling me that this is the medication that she's on. And I

5

would put it in her personnel file." (*Id.*) Vogt also testified that she had never seen Claimant have a panic attack before June 18, 2015. (*Id.*)

With regard to notice, Claimant testified that "every time I changed medication, they were all made well aware of it." (*Id.* at 11.) Claimant further testified that Samick, who was not present on Claimant's last day of work, had permitted Claimant to leave the production line during prior panic attacks, which should have put Employer on notice of her condition. (*Id.*)[6] This court has stated, however, that "'[a] constructive notice concept cannot obviate the claimant's duty to inform the employer of a health problem before voluntarily terminating employment.'" *Lee Hospital*, 637 A.2d at 699 (citation omitted). Therefore, Claimant failed to prove that she properly informed Employer of her medical condition so as to trigger a duty to accommodate. *See id.* (rejecting the claimant's assertion that the employer "should have known" about her health condition where the claimant testified that "'[s]everal people knew what [she] was going through'" and she believed her condition "'was quite obvious'") (citing testimony); *Blackwell*, 555 A.2d at 282 n.6 (noting that the claimant's written notice to the employer of her health problem, given in conjunction with her resignation, "came too late to permit [the] [e]mployer to accommodate [the] [c]laimant").

---

[6] Although Samick was present at the hearing, Claimant asked her no questions on this issue. Claimant also presented no witnesses of her own. We recognize that Claimant was without counsel at the hearing. However, "a layperson who represents [herself] in legal matters must to an extent assume the risk that [her] lack of expertise in legal training will prove [her] undoing." *Huffman v. Unemployment Compensation Board of Review*, 555 A.2d 287, 288 (Pa. Cmwlth. 1989).

The record also supports the UCBR's determination that Claimant failed to inform Employer of any work restrictions due to her medical condition before voluntarily quitting. Vogt testified as follows:

> If [Claimant] would have brought in something from her doctor stating that – what her limitations were, we would have worked with her. We would have found something for her to do. I mean, we have worked in the past with other people who have had issues that they needed work – special treatment, you know, work limitations. We have worked with them for over – we have been here for over 20 years and never had this type of thing happen.

(N.T., 8/5/15, at 14.) Claimant admitted that she did not provide Employer with any limitations imposed by her doctor. (*Id.* at 11.) Because Claimant failed to notify Employer of any work restrictions before voluntarily quitting, the UCBR correctly concluded that Claimant failed to make a good faith effort to preserve her employment.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

7

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy L. McTaggart,                          :
                                             : No. 1845 C.D. 2015
                    Petitioner               :
                                             :
             v.                              :
                                             :
Unemployment Compensation                    :
Board of Review,                             :
                                             :
                    Respondent               :


# O R D E R


AND NOW, this 19<u>th</u> day of <u>April</u>, 2016, we hereby affirm the September 18, 2015, order of the Unemployment Compensation Board of Review.


_____
ROCHELLE S. FRIEDMAN, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy L. McTaggart,                          :
                    Petitioner               :
                                             :
          v.                                 :     No. 1845 C.D. 2015
                                             :     Submitted: February 12, 2016
Unemployment Compensation Board              :
of Review,                                   :
                    Respondent               :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

CONCURRING OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED:  April 19, 2016

          I concur in the result.  I write separately because I disagree with the
majority's analysis of whether Employer had notice of Claimant's medical
condition.

          It is undisputed that Claimant suffers from anxiety for which she takes
medication.  Employer had actual notice of this condition because Employer's
human resources department maintained her medication so that it could dispense it
to her when needed.  The Referee's discussion includes the following observation:

> In the present case, the claimant was under the care of a
> physician and was prescribed medication for anxiety.  *The
> claimant made the employer aware that she was under a
> doctor's care and was given medication for anxiety*, but was not
> under any sort of medical restriction while working for the
> employer.

Referee Decision at 2 (emphasis added). Claimant also testified that her supervisor had previously permitted her to leave work when she experienced a panic attack.

In discussing whether Employer had notice of Claimant's condition, the majority addresses a "constructive notice concept." Majority slip op. at 6 (quoting *Lee Hospital v. Unemployment Compensation Board of Review*, 637 A.2d 695, 699 (Pa. Cmwlth. 1994)). Constructive notice is not implicated here. Because Claimant's supervisor knew of Claimant's anxiety as did Employer's human resources department, Employer had actual notice of Claimant's medical condition.

However, as it turns out, Employer's notice of Claimant's health condition is irrelevant. The Referee found that Claimant was "not under any sort of medical restriction while working" for Employer and, despite her panic attack, Claimant "was still able to work on the day in question, even returning from lunch, to continue working." Referee Decision at 2, 3. Claimant left work only after finding out that three other employees had been permitted to leave. In short, the Referee did not credit Claimant's testimony that she had to leave work on the day in question because of her panic attack. I agree that Claimant is not entitled to benefits because she did not prove that her health condition caused her to terminate her employment.

_____
MARY HANNAH LEAVITT, President Judge

MHL-2